# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Colleton River Club, Inc., <br><br> Plaintiff, <br> v. <br><br> RSUI Indemnity Company, <br><br> Defendant. | Case No. 9:24-cv-6357-RMG <br><br> **ORDER AND OPINION** |

Before the Court are the parties' cross motions for summary judgment. (Dkt. Nos. 35, 36). For the reasons stated below, the Court denies Defendant's motion and grants Plaintiff's motion.

## Background

Plaintiff brought the instant lawsuit against Defendant regarding the Directors and Officers Liability portion of Policy No. NPP681603 that Defendant issued. (Dkt. No. 1-1 at 1). Plaintiff is an owners' association created to own, operate, and maintain common property and community improvements in the Colleton River Club, a planned community in Bluffton, South Carolina.

In an underlying lawsuit, J Lot Owners sued Plaintiff alleging that, for decades, "the Club failed to meet its fiduciary duty to create a reserve fund related to [a] seawall" and that, therefore, there was "no money set aside for the seawall." (Dkt. No. 36 at 8). The J Lot Owners asserted that, had Plaintiff fulfilled those obligations over time, a reserve account would have been funded by contributions from past owners of the J Lots as well as current J Lot Owners such that, when the J Wall inevitably reached the end of its useful life, there would have been reserve funds to replace it. (Dkt. No. 38 at 1-2).

Plaintiff settled the J Lot Owners' lawsuit with Defendant's consent. (Dkt. No. 36 at 10-11); *see* (Dkt. No. 37) (not disputing Defendant consented to settlement).

Plaintiff then brought this lawsuit against Defendant in state court. (Dkt. No. 1-1). Defendant removed this action to federal court. (Dkt. No. 1).

The parties filed cross-motions for summary judgment.

Defendant moved for summary judgment, (Dkt. Nos. 35, 39), arguing that: (1) the Policy excludes property damage and that Plaintniff is therefore not entitled to indemnification for its settlement of the underlying lawsuit; and (2) Defendant properly reserved its rights regarding said exclusion. Plaintiff opposes Defendant's motion. (Dkt. No. 38).

Plaintiff moved for partial summary judgment, (Dkt. Nos. 36, 40), asking that: (1) the Court declare the Policy covers the settlement reached for the underlying action; (2) that Defendant is liable to Plaintiff for $2,011,119 as covered under the Policy; and (3) that defendant breached its contract with Plaintiff. Plaintiff did not move for summary judgment on its bad faith claim. Defendant opposes Plaintiff's motion. (Dkt. No. 37).

The parties' cross-motions are fully briefed and ripe for disposition.

## Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court interprets all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold*, Inc., 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate

there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## Discussion

The rules of insurance contract interpretation under South Carolina law are well-settled. At bottom, "[t]he question resolves itself [ ] simply into whether, on the issue of the extent of coverage, there is ambiguity." *Robbins v. Selective Ins. Co. of Am.*, No. CV 2:17-0574-RMG, 2018 WL 8693730, at *2 (D.S.C. Oct. 26, 2018) (citing *Tobin v. Beneficial Standard Life Ins. Co.*, 675 F.2d 606, 608 (4th Cir. 1982)). "Courts must enforce, not write, contracts of insurance and their language must be given its plain, ordinary and popular meaning." *Tobin*, 675 F.2d at 608. "An insurance policy's terms must be construed most liberally in favor of the insured, and if the language is ambiguous, or capable of two reasonable interpretations, the construction most favorable to the insured should be adopted." *Id.* But "in construing an insurance contract, all ... provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity" where there is none. *Catlin Specialty Ins. Co. v. McPherson,* No. 2:12-cv-2785, 2013 U.S. Dist. LEXIS 106993, at *7-8, 2013 WL 3946225 (D.S.C. July 31, 2013) (citing *Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 225 S.E.2d 344, 348 (S.C. 1976)).

The Policy states that a Loss in connection with any Claim: "Alleging, arising out of, based upon, attributable, or in any way involving, directly or indirectly: . . . Damage to or destruction of any tangible property" is not covered. (Dkt. No. 35-2 at 18, 27); *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005) (noting "arising out of" in insurance contracts means "caused by"); *see Braunstein v. Comm'r*, 374 U.S. 65, 70 (1963) ("attributable to" means "caused or generated by"); Merriam-Webster, "Base," ("to find a foundation or basis for: to find a base" as in "a story based upon real-life events").

Defendant moves for summary judgment on the basis that the underlying lawsuit involves Plaintiff's obligation to replace the seawall and thus concerns "property damage itself, due to alleged neglect by the Club in maintaining and repairing it." (Dkt. No. 35-1 at 15); (Dkt. No. 35-6) (pre-suit Oct. 2, 2020, letter to Plaintiff that the above exclusion precluded "coverage . . . for the cost of the seawall"); (Dkt. No. 36-12) (post-suit Oct. 7, 2022 letter again affirming underlying lawsuit was not covered because each "count[] seeks damages for expenses to repair and maintain the seawall" and invoking allocation clause only with regard to defense costs because "as pled, there are no possible covered damages"). Or put differently, Defendant contends that "[t]he allegations against the Club, and its obligations under the Settlement Agreement to contribute to the replacement of the Seawall, are all matters involving the property damage itself, due to alleged neglect by the Club in maintaining and repairing it, and as a result the RSUI D&O Policy provides no coverage." (Dkt. No. 35-1 at 15).

Plaintiff, for its part, opposes Defendant's motion and itself moves for summary judgment that the Policy covers settlement of the underlying action. (Dkt. No. 38 at 5-9); (Dkt. No. 36 at 16). As pertinent here in particular, Plaintiff argues that the term "in any way involving" is ambiguous given the word "involve" has multiple meanings, some more or less favorable to the

insured. *See Precision Walls, Inc. v. Liberty Mut. Fire Ins. Co.*, 763 S.E.2d 598, 602 (Ct. App. S.C. 2014) ("The court must construe ambiguous terms in an insurance policy liberally in favor of the insured and strictly against the insurer."); Merriam-Webster, "Involve," (as relevant here, defined as "to have within or as a part of itself," "to require as a necessary accompaniment," or "to relate closely").

The Court DENIES Defendant's motion. Defendant misstates a large part of the harm for which the underlying lawsuit sought redress. *See, e.g.*, (Dkt. No. 35-14 at 24) (alleging, inter alia, that Plaintiff failed to insure the Seawall, bill assessments pursuant to the Covenants, or establish a reserve for the replacement of the Seawall). Namely, the underlying lawsuit concerned Plaintiff's breach of its fiduciary duty to J Lot Owners to properly fund a reserve fund and the financial burden that omission imposed on future owners. This breach does not arise from, is not based upon, or attributable to property damage. Nor does this breach, involve—i.e., "require as a necessary accompaniment"—property damage. *See Pulliam v. Travelers Indem. Co,* 743 S.E.2d 117, 122 (Ct. App. S.C. 2013) ("The failure to establish a reserve fund resulted in Respondents having to expend more from their own pockets to make the repairs than they might have otherwise had to expend—economic damage."); (Dkt. No. 38 at 1-2) (arguing that if Club had fulfilled its obligations, a reserve account would have existed but that, due to the Plaintiff's breach, no reserve fund existed and "current J Lot Owners were left to shoulder the full financial responsibility of funding replacement of the J Wall").

Thus, the cases Defendant relies on are inapplicable. *See Eastpointe Condominium I Ass'n, Inc. v. Travelers Cas & Sur. Co. of Am.*, 379 Fed. App'x 906 (11th Cir. 2010) (nowhere mentioning reserve funds and affirming grant of summary judgment to insurer under property damage exclusion where insured sought indemnification for defense costs and had been sued by

condominium owner for failure to adequately maintain roof); *Hess v. Travelers Cas. and Sur. Co. of Am.*, 2013 WL 623981, at *5 (N.D. Ill. Feb. 20, 2013) (granting insurer summary judgment on duty to defend where "actual allegations in the JDL Lawsuit" did not concern inadequately funded reserves but only implicated failure to detect and correct construction defects).

Further, the Court GRANTS Plaintiff's motion as to the request for a declaration that the settlement of the underlying action is a covered Loss under the Policy and that Defendant breached its contract with Plaintiff by not indemnifying Plaintiff for the same. (Dkt. No. 36 at 15-21) (explaining why Plaintiff properly made a "claim" for a "wrongful act" during the "Policy Period" and why the settlement of the underlying action is a "Loss"—all points Defendant does not contest). Further, the Court grants Plaintiff's motion to the extent that it argues Defendant did not adequately reserve the right to require Plaintiff allocate covered versus noncovered damages. (Dkt. No. 36 at 20); (Dkt. No. 37 at 15 n.13) (noting Defendant believed "there was no need to allocate between covered and noncovered damages because, as stated in [Dkt. No. 36-12], *none* of the damages were covered"); (*Id.* at 12) ("RSUI seeks no such allocation, having advised the Club and consistently maintained that there is *no coverage* for any of the damages alleged in the underlying claim because coverage for all damages is excluded by application of the Property Damage Exclusion.").

Further, the Court finds that Plaintiff is entitled to $2,011,119 under the Policy, an amount that Defendant does not contest. (Dkt. No. 36 at 11-14); *see generally* (Dkt. No. 37).

## Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for partial summary judgment (Dkt. No. 36) and **DENIES** Defendant's motion for summary judgment (Dkt. No. 35). The Court will promptly schedule a status conference to set Plaintiff's bad faith claim for trial.

AND IT IS SO ORDERED.

        s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

January 15, 2026
Charleston, South Carolina